## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* ARTHUR L. WILLCHER

[Misc. Docket (Subtitle BV) No. 27, September Term, 1978.]

*Decided February 11, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Henry J. Myerberg, Assistant Bar Counsel,* for Attorney Grievance Commission.

*Arthur L. Willcher* in proper person.

ELDRIDGE, J., delivered the opinion of the Court.

The Attorney Grievance Commission filed a petition for disciplinary action against Arthur L. Willcher alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. The matter was referred to Judge Chasanow of the Circuit Court for Prince George's County for a hearing and factual findings pursuant to Maryland Rule BV9, *et seq.*

The facts as found by Judge Chasanow may be summarized as follows. Willcher was admitted to the District of Columbia Bar in 1937 and to the Maryland Bar in 1959. He was suspended from the practice of law in the District of Columbia in July 1977. On September 15, 1977, Willcher agreed to represent James L. Garrison, then a resident of Montgomery County, Maryland. Willcher spoke to Mr. Garrison in Willcher's District of Columbia office, just prior to his moving his practice to Maryland. Willcher promised to prepare a separation and property settlement agreement for Mr. Garrison and his wife, and to represent Mr. Garrison in an uncontested divorce action in the Circuit Court for Montgomery County, all for a fee of $750.00. On September 16, 1977, Willcher undertook to deliver the property settlement and separation agreement within one week, and he then received at his District of Columbia office a check from the Garrisons for $250.00.

After several phone calls, the agreement, which contained many errors and omissions, was delivered in the middle of October 1977. After some changes were made by the Garrisons, the agreement was sent back to Willcher. When Willcher failed to acknowledge receipt of the agreement, Mr. Garrison wrote a letter on November 18, 1977, to Willcher at his Maryland office to ascertain the status of the matter. Subsequent to that date, Mr. Garrison called Willcher's office at least once a week for about three months requesting Willcher to call him. It was not until Mr. Garrison filed complaints with the District of Columbia Bar Counsel and the Maryland Attorney Grievance Commission that Willcher returned the executed separation and property settlement agreement on February 22, 1978.

As to the reason for Willcher's failure to properly handle this matter, Judge Chasanow further found:

"During the period of time in question, Mr. Willcher was under the medical care of numerous doctors. Unfortunately for Mr. Willcher, some of the doctors did not properly diagnose his illnesses. As a result thereof, the respondent was taking medication which was detrimental to his health. Today, the respondent knows that during this crucial period of time, he was suffering from manic depression, an abnormal brain syndrome, and an enlarged left ventricle. Although, we find Mr. Willcher's behavior was in part, the result of his illness, as will be discussed more fully below, we do not find that his illness fully explains the representation he supplied his client, Mr. Garrison."

Judge Chasanow went on to find that Willcher had violated several disciplinary rules. First, it was found that Willcher violated DR 1-102, subsections (A) (1) and (A) (6), which provide :

"Misconduct.

(A)   A lawyer shall not:

(1)   Violate a Disciplinary Rule.

* * *

(6)   Engage in any other conduct that adversely reflects on his fitness to practice law."

As Judge Chasanow stated:

"Subsections (A) (1) and (A) (6) of Rule 1-102 are all encompassing provisions, since if we find the respondent in violation of any of the Disciplinary Rules, he automatically is in violation of the cited subsections of this Rule. Because we find Mr. Willcher violated some of the Disciplinary Rules, we also find as a matter of law that the respondent is in violation of Rule 1-102 (A) (1) and (A) (6)."

Second, it was found that DR 6-101 (A) (1), (A) (2) and (A) (3) were violated when Willcher attempted to handle a legal matter which he should have known that he was incompetent to handle, when he handled a legal matter without adequate preparation, and when he neglected a legal matter entrusted to him. Third, Judge Chasanow determined that a violation of DR 7-101 (A) (2) resulted from Willcher's failure to carry out timely his contract of employment with Mr. Garrison. Fourth, Willcher was found to have violated DR 9-102 (B) (4) when he failed to deliver the property settlement and separation agreement in a timely manner.[1]

Both Willcher and the Attorney Grievance Commission, by Bar Counsel, filed exceptions to Judge Chasanow's finding that Willcher's behavior was in part the result of illness. Mr. Willcher argues that his illness was a complete defense in that he was not responsible for his actions during the relevant times. Bar Counsel argued that the trial record failed to support a finding that Mr. Willcher's conduct was in any part attributable to mental or physical illness. We reject both arguments.

The hearing judge's findings have a force and effect similar to those in a master's report in equity. Such findings are prima facie correct and will not be disturbed unless they are clearly erroneous. *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 307 A.2d 677 (1973).

At trial Willcher introduced the testimony of two physicians which had been previously offered in January 1978 by Mr. Willcher at a prior grievance proceeding. The testimony of both physicians clearly shows that Mr. Willcher was physically and mentally ill during 1977 and early 1978. In fact, the testimony of both physicians discloses that Willcher has been suffering from severe depression since 1974. As a result of treatment of his depression with an

---

1. Judge Chasanow also found that Willcher had violated DR 3-101 because he gave legal advice for a fee in the District of Columbia when he was prohibited from practicing law in that jurisdiction. However, we doubt that the mere discussion with and receiving a fee from a Maryland client on September 15 and 16, 1977, in the District of Columbia in connection with a Maryland property settlement and separation agreement and a Maryland divorce action, amounts to a violation of the rule.

improper dose of lithium, Willcher developed hypothyroidism. Willcher's physical and mental manifestations of hypothyroidism included lethargy, continued depression and an impaired ability to concentrate. The doctors further testified that Mr. Willcher would have to be maintained indefinitely on lithium to combat his manic depression and maintained on a thyroid medication to counteract the effects of his hypothyroidism. It is indicated in medical texts that lithium demonstrates a specificity in acute manic states. Indeed, lithium is viewed by some as the first effective preventative measure in any major psychotic disorder.[2] However, the line separating the therapeutic level from the toxic level of lithium is "just a few tenths of a milli-equivalent per liter away." [3] The record reveals that Willcher's blood levels of lithium were improperly monitored, resulting in the disturbance of his thyroid. It is also inferrable from the record that other side effects of lithium poisoning may have been present during some portion of the relevant time period. Relevant side effects include muscle weakness, a sluggish dazed feeling, tremors and central nervous system changes shown on electroencephalograms.[4] Dr. Waletsky testified that Willcher did in fact demonstrate such sluggishness upon initial examination in June 1977. Given in proper doses, lithium is effective in preventing frequent recurrences of manic and depressive relapses, and Willcher is presently maintained on this medication with proper monitoring of his serum lithium levels.

The testimony of Drs. Waletsky and Schulman clearly support Judge Chasanow's finding that Willcher's misconduct was in part due to his mental and physical illness. On the other hand, the testimony does not compel the conclusion that Willcher's misconduct was entirely due to his illness. In sum, Judge Chasanow's finding regarding causation cannot be deemed "clearly erroneous."

Although physical or mental incapacity is no defense to misconduct, it must be considered together with the facts and

---

2. International Encyclopedia of Psychiatry, Psychology, Psychoanalysis, and Neurology (B Wolman ed. 1977), p. 358.
3. *Id.* at 359.
4. *Ibid.*

circumstances of the misconduct, as well as any prior violations, in determining the appropriate sanction. *See Attorney Grievance Comm'n v. Pollack,* 279 Md. 225, 369 A.2d 61 (1977).

In the *Matter of Willcher,* 404 A.2d 185 (D.C. 1979), Mr. Willcher was suspended from the District of Columbia Bar for a period of five years. The charges brought against Mr. Willcher included neglect of legal matters entrusted by clients, obtaining excessive fees, failure to carry out contracts of employment, failure to respond to inquiries of the District of Columbia Bar Counsel, failure to preserve identity of funds of a client, solicitation of employment and conduct prejudicial to the administration of justice. The court imposed the suspension rather than the recommended sanction of disbarment because of the findings and recommendations of the Disciplinary Board " 'that there is a strong likelihood that respondent was suffering from a severe form of depression at the time of misconduct, and that his misconduct was a result of, or at least exacerbated by, his debilitated mental condition.' " 404 A.2d at 189. Mr. Willcher is also presently suspended from the practice of law in this State. In an unreported order he was suspended for sixty (60) days to begin on April 10, 1978, for misrepresentation to a client and unjustified retention of a retainer in violation of DR 7-102 (A).[5]

Mr. Willcher's misconduct, which was the subject of the instant proceeding, was not shown to involve fraud or dishonesty. It grew out of a single matter and related to negligence, dilatoriness and legal ability. In light of the nature of the misconduct, and the hearing judge's finding that it was due in part to illness, we do not believe that disbarment is the appropriate sanction at this time. On the other hand, considering that the misconduct was not entirely due to illness, and considering Willcher's prior suspensions for misconduct, a further suspension for a substantial length of time is in order. Moreover, the nature of Willcher's illness, with its apparent permanent effects, dictates that he not be

5. Mr. Willcher remains suspended for failure to comply with Rule BV13 b which requires a suspended attorney to file a verified statement that he has complied in all respects with the terms of the suspension.

automatically readmitted after a fixed period of time. As in *Attorney Griev. Comm'n v. Flynn,* 283 Md. 41, 46-47, 387 A.2d 775 (1978), and *Attorney Grievance Comm'n v. Cooper,* 279 Md. 605, 369 A.2d 1059 (1977), we shall suspend Arthur L. Willcher for an indefinite period.

*It is so ordered.*