836 A.2d 588

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,**

v.

**Patti Diane Gilman WEST.**

**Misc. AG No. 38, Sept. Term, 2002.**

Court of Appeals of Maryland.

Nov. 20, 2003.

Melvin Hirshman, Bar Counsel and John C. Broderick, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland (Gail D. Kessler, Asst. Bar Counsel for the Attorney Grievance Commission of Maryland), for petitioner.

Patti Diane Gilman West, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against Patti Diane Gilman West, alleging violations of the Maryland Rules of Professional Conduct. The Commission charged respondent with violating Rules 1.1 (Competence),[1]

---

\* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Rule 1.1 provides as follows:

1.2 (Scope of representation),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] 1.16 (Declining or terminating representation),[5] 3.2 (Expediting litigation),[6] 3.3 (Candor toward the tribunal),[7]

---

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

2. Rule 1.2 provides, in pertinent part, as follows:

"(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter."

3. Rule 1.3 provides as follows:

"A lawyer shall act with reasonable diligence and promptness in representing a client."

4. Rule 1.4 provides as follows:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Rule 1.16 provides, in pertinent part, as follows:

"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client

\* \* \*

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

6. Rule 3.2 provides as follows:

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

7. Rule 3.3 provides, in pertinent part, as follows:

"(a) A lawyer shall not knowingly:

3.4(c) and (d) (Fairness to opposing party and counsel),[8] 8.1(b) (Bar admission and disciplinary matters),[9] and 8.4(a), (c), and (d) (Misconduct).[10] Pursuant to Maryland Rule 16–752(a), we referred the matter to Judge Kaye Allison of the Circuit Court for Baltimore City to make findings of fact and proposed conclusions of law. Judge Allison held an evidentiary hearing and concluded that respondent had violated Rules 1.1, 1.3, 1.4, 3.2, 3.3(a)(1), 3.4(c) and (d), 8.1(b), and 8.4(a), (c), and (d). She found that Bar Counsel failed to establish that respondent had violated Rule 1.2 or Rule 1.16.

---

(1) make a false statement of material fact or law to a tribunal"

8. Rule 3.4 provides, in pertinent part, as follows:
 "A lawyer shall not:
 * * *
 (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
 (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party"

9. Rule 8.1 provides, in pertinent part, as follows:
 "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
 * * *
 (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

10. Rule 8.4 provides, in pertinent part, as follows:
 "It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 * * *
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice"

## I.

Judge Allison made the following Findings of Fact and Conclusions of Law: [11]

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

"Patti Diane Gilman West was admitted to the Bar of the Court of Appeals on May 25, 1982. The Attorney Grievance Commission of Maryland has filed a Petition for Disciplinary Action against Patti Diane Gilman West and, by Order dated July 23, 2002, the matter was assigned to this Court to be heard and determined in accordance with Maryland Rule 16–757. The Respondent was served with the Writ of Summons, transmittal Order dated July 23, 2002, the Petition for Disciplinary or Remedial Action, and various discovery material on October 28, 2002. The matter came before this Court and a hearing was conducted on February 20, 2003. From that hearing the Court makes the following Conclusions of Law and Findings of Fact, each of which, the Court finds to have been established by clear and convincing evidence.

### Carter

"On or about September 29, 1999, Maryland General Hospital and [name deleted], LWS, a social worker employee of the Hospital, were served with a copy of a Complaint filed against them by James Carter and others, *Carter, et al. v. Maryland General Hospital,* Case No. 24–C–99–00521, Circuit Court for Baltimore City. At the time of service, the Hospital and [social worker] were served with interrogatories, request for production of documents and notices to take depositions. In October 1999 Respondent was retained to represent both the Hospital and [social worker] in the negligence action filed on behalf of Carter and others.

---

11. The record reflects that malpractice claims were filed by respondent's client, Maryland General Hospital, and the cases were settled by respondent's malpractice carrier. Accordingly, the names of respondent's clients who were injured as a result of her misconduct have been deleted from this opinion.

"Respondent did not timely respond to interrogatories and request for production of documents in the *Carter* matter. On or about July 27, 2000 Carter's counsel filed a Motion to Compel Discovery to which Respondent failed to timely respond. By Order dated August 18, 2000, the Court in the *Carter* matter ordered that the employees of the Hospital named in the order appear for deposition and that the Hospital and [social worker] provide responses to Carter's discovery requests within thirty days of the date of that Order.

"Respondent did not take measures to effectuate her clients' compliance with that Order. On or about September 29, 2000, Carter filed a motion for judgment based on the noncompliance.

"The Court denied Carter's motion for judgment by Order dated November 6, 2000, and again ordered that the named employees of the Hospital appear for deposition, and that the Hospital and [social worker] provide responses to Carter's interrogatories and request for production of documents. The Court further ordered that failure to comply with discovery requests by the thirty-day deadline, without good cause, would result in a default judgment against the Hospital and [social worker].

"Respondent failed to provide the discovery on behalf of the Hospital and [social worker] within thirty days of the Court's Order dated November 6, 2000. Carter filed a second motion for judgment on or about December 7, 2000. Respondent failed to respond and on January 19, 2001, the Court granted that Motion.

"Respondent also failed to effectuate her clients' compliance with the provision of the Scheduling Order requiring the designation of an expert witness on damages. Respondent's failure to effectuate compliance with the Court's Scheduling Order and two Orders responding to discovery requests left the Hospital with a judgment against it as to liability and no expert witness to defend against Carter's experts on damages. Respondent misrepresented the status of the case to the Hospital representatives. She also failed to advise them that

she had not responded to discovery and that motions to compel and for judgment had also been filed. She failed to advise that default judgment had been granted and that she had not designated any damage expert.

"Respondent failed to provide competent representation to her clients in violation of Maryland Rules of Professional Conduct 1.1. Respondent failed to act with reasonable diligence and promptness in violation of Maryland Rule of Professional Conduct 1.3. Respondent failed to keep her clients reasonably informed of the status of their case and to explain the status of the legal matter as reasonably necessary for the clients to make informed decisions in violation of Maryland Rule of Professional Conduct 1.4. Respondent knowingly misrepresented the status of the *Carter* matter to the hospital in violation of Maryland Rule of Professional Conduct 8.4(c). Respondent failed to expedite litigation in violation of Maryland Rule of Professional Conduct 3.2. Respondent violated Maryland Rule of Professional Conduct 3.4(c)(d) by neglecting her obligation to take reasonably diligent efforts to comply with proper discovery requests under the scheduling order, the Maryland Rules of Procedure and Maryland Rules of Professional Conduct. These actions are also violations of Maryland Rule of Professional Conduct 8.4(a), and (d).

### *Davis*

"On or about June 8, 1998, Bridgette Davis, mother and next friend of Desmond Davis, filed a complaint against [name deleted], M.D., [name deleted], M.D., P.A. and the Maryland General Hospital, *Davis, et al. v. Maryland General Hospital,* Case No. 24–C–98–159105/CC4926, Circuit Court for Baltimore City. Respondent was retained to represent the Hospital and filed an Answer to the Davis complaint on or about August 24, 1998.

"Respondent failed to timely identify a damage expert pursuant to the Scheduling Order. This failure caused significant prejudice to the Hospital's defense of the case. Respondent failed timely to communicate to the Hospital or its excess insurance carrier, OHIC (Ohio Hospital Insurance Company),

a settlement offer from Davis' counsel dated July 5, 2000. Respondent conveyed the offer in December 2000. Respondent's failure necessitated that the Hospital and OHIC agree to an unfavorable settlement.

"Respondent represented to the Court that she needed continuances in the *Davis* matter based on an incapacity which prevented her from defending the case. However, Respondent was practicing law in other matters during this time period.

"In the course of her representation in *Davis*, Respondent (1) violated Maryland Rule of Professional Conduct 1.1 by her failure to competently pursue the legal matter entrusted to her; (2) Maryland Rule of Professional Conduct 1.3 by failing to diligently and promptly pursue the legal matter; (3) Maryland Rule of Professional Conduct 1.4 by failing to reasonably communicate with her client about the status of the legal matter; (4) Maryland Rule of Professional Conduct 3.2 by failing to reasonably expedite the litigation consistent with her client's best interest; (5) Maryland Rule of Professional Conduct 3.3(a)(1) by her knowing misrepresentation of the need for a continuance; (6) Maryland Rule of Professional Conduct 3.4(c)(d) by knowingly disobeying the obligation to provide discovery and identify expert witnesses; and (7) Maryland Rule of Professional Conduct 8.4(a), (c) and (d).

## *Lewis*

"On or about November 16, 1998, Mary Lewis filed a Complaint on her own behalf and on behalf of Lakriasha M. Lewis–Dixon, Case No. 98–320105/CC10009, in the Circuit Court for Baltimore City naming one of Maryland General Hospital's physicians, [name deleted], as the defendant.

"Respondent was retained by the Hospital to represent [physician] and she filed an Answer on his behalf on December 21, 1998. On or about January 28, 1999, Respondent identified Dr. Robert Keehn as an expert who could certify that a meritorious defense existed. In August 2000, Lewis' counsel requested Respondent provide dates when Dr. Keehn could be

deposed. Respondent failed to respond to that request. Lewis' counsel served a notice of deposition of Dr. Keehn on Respondent for October 3, 2000. Neither Respondent nor Dr. Keehn appeared for the October 3, 2000 deposition. On or about October 10, 2000, Lewis' counsel filed a motion to compel discovery and for sanctions.

"By Order dated November 14, 2000, the Court granted Lewis' motion to compel discovery and for sanctions and ordered that Dr. Keehn be produced for deposition on or before November 30, 2000. The Order specified that noncompliance would result in Dr. Keehn being excluded as an expert. Respondent failed to produce Dr. Keehn for deposition and failed to request an extension of time. Dr. Keehn was precluded from testifying on behalf of [physician]. With no expert on the standard of care, the Hospital was forced to enter into a settlement.

"Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 3.2, 3.4(c)(d) and 8.4(a).

### *Strong*

"On or about January 5, 2000, Paul Strong filed a complaint in the Circuit Court for Baltimore City naming Maryland General Health Systems, Incorporated; Maryland General Hospital; [physician] and several of the Hospital's staff physicians as defendants, *Strong v. Maryland General Hospital,* Case. No. 24–C–00–000055. Respondent was retained to represent the Hospital and [physician] and she filed an Answer to the Strong complaint on March 9, 2000.

"On or about January 25, 2000, Strong's counsel served a first request for production of documents on the Hospital and [physician]. Respondent failed to effectuate a timely response. On May 16, 2000 Strong's counsel served the Hospital and [physician] with Interrogatories and a Second Request for Production of Documents, to which Respondent failed to effectuate a timely response. Approximately ten months later, on January 24, 2001, a motion to compel and for sanctions was filed. Respondent failed to file an opposition.

"By Order dated February 25, 2001, the Hospital and [physician] were ordered to 'fully respond to [Strong's Interrogatories] and produce all documents responsive to [Strong's] document requests within fifteen days of [that] Order' and it was further ordered that if the Hospital and [physician] failed to respond to Strong's discovery requests within fifteen days of that Order, the Court would enter a default judgment upon subsequent pleadings. Respondent did not provide answers to interrogatories nor produce documents on behalf of the Hospital and [physician]. With its ability to defend the *Strong* matter substantially impaired, the Hospital was forced to settle.

"Respondent's actions violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4, 3.2, 3.4(c)(d) and 8.4(a)(d).

## *Neal*

"On or about March 9, 2000, Samuel J. Neal, III filed a complaint in the Circuit Court for Baltimore City naming Maryland General Hospital as the defendant, *Neal v. Maryland General Hospital,* Case No. 24–C–00–001240. Respondent was retained to represent the Hospital in the Neal matter and filed an answer on or about May 12, 2000. On or about May 12, 2000, Neal's counsel served interrogatories and requests for production of documents on the Respondent as counsel for the Hospital. Respondent failed to effectuate her client's response.

"On or about October 12, 2000, Neal's counsel filed a motion to compel and for sanctions to which Respondent did not respond. By Order dated November 14, 2000, the Court ordered that responses to Neal's discovery requests be produced within fifteen days of the date of that Order. On or about December 19, 2000, Neal's counsel filed a motion for default judgment because Respondent did not respond to the Order compelling answers to discovery. Respondent did not file an opposition to Neal's motion for default judgment. An Order of Default was signed on January 18, 2001.

"Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4, 3.2, 3.4(c)(d), and 8.4(a)(d).

### Stewart

"On or about August 8, 1994, Kenneth Stewart and others filed an action, *Stewart v. Frimpong,* Case No. 94220028/ CL184410, in the Circuit Court for Baltimore City naming as defendant [name deleted], an employee nurse-anesthetist of the Maryland General Hospital. The Hospital retained Respondent to represent [nurse-anesthetist]. Respondent obtained summary judgment in favor of [nurse-anesthetist] in 1995. Thereafter Stewart appealed to the Court of Special Appeals. That Court remanded the matter and eventually Stewart appealed to the Court of Special Appeals a second time. During the second appeal, Respondent failed to file a brief and failed to appear at oral argument. The Court of Special Appeals reversed the summary judgment and remanded for trial before the Circuit Court for Baltimore City. The Hospital settled.

"Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4, 3.2, and 8.4(a)(d).

### Koehler

"On or about October 25, 1999, Mark M. Koehler, Sr. and his wife filed a Complaint in the Circuit Court for Baltimore City naming Maryland General Hospital as Defendant, *Koehler v. Maryland General Hospital,* Case No. 24–C–99–005053. On or about November 15, 1999, the Hospital was served with a writ of summons, complaint, interrogatories, request for production of documents and a case civil information sheet. Respondent was retained to represent the Hospital and filed an answer on its behalf on December 7, 1999.

"Respondent failed to effectuate the Hospital's response to Koehler's interrogatories and request for production of document for over three months. Further, Respondent failed to respond to Koehler's counsel's numerous written and telephonic attempts to obtain the outstanding discovery. On or about February 29, 2000, Koehler's counsel filed a motion for

sanctions to which Respondent did not respond. On March 24, 2000, the Court entered an Order compelling the Hospital to respond to the outstanding discovery within fifteen days from the date of that Order. On or about April 18, 2000, Koehler's counsel moved for default judgment based on non-compliance with the Court's order. Respondent did not oppose Koehler's motion for default judgment and it was granted on May 15, 2000. A Revised Order granting default judgment was entered on June 7, 2000. Respondent moved to vacate that judgment. The motion to vacate was denied on July 14, 2000.

"With no ability to defend the action, the Hospital was forced to settle. Koehler's counsel demanded $150,000.00. Respondent had failed to convey to the Hospital a prejudgment settlement demand from Koehler's counsel in the amount of $75,000.00.

"Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4, 3.2, 3.3(a)(1), 3.4(c)(d), 8.4(a) and (d).

### Matthews

"On or about September 30, 1999, Paul Matthews filed a complaint in the Circuit Court for Baltimore City naming Maryland General Hospital and several physicians including [name deleted] as Defendants, *Matthews v. Maryland General Hospital, et al.,* Case No. 24–C–99–004642. Respondent was retained to represent the Hospital and [physician] and filed an answer to Matthews' complaint on October 26, 1999. Matthews' counsel served interrogatories and a request for production of documents on the Hospital and [physician]. Respondent failed to have the defendants provide complete responses to those discovery requests and failed to produce witnesses for depositions. Matthews' counsel filed a motion to compel discovery on April 14, 2000. Respondent failed to respond. On or about June 12, 2000, the Court granted Matthews' motion to compel and ordered the Hospital to provide the requested discovery within forty-five days.

"On or about August 28, 2000, Matthews' counsel filed a motion for judgment by default based on the failure to comply with the Court's Order dated June 12, 2000 compelling discovery. The Court granted Matthews' motion for judgment by default, but granted the defendants fifteen days to provide the discovery before entry of judgment. Respondent failed to comply with the Court's Order and Matthews' counsel again filed for default judgment on December 7, 2000. Respondent filed an untimely opposition on February 23, 2001. The Court struck Respondent's untimely opposition on March 23, 2001, and subsequently entered a default judgment against the Hospital.

"The effect of the default was to preclude the Hospital from defending against Matthews' proof of liability or damages and from calling any expert witnesses in its defense. Respondent misrepresented to the Hospital the status of the *Matthews* matter.

"Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 1.4, 3.2, 3.4(c)(d), and 8.4(a)(d).

### *Carter, Davis, Lewis, Strong, Neal, Stewart, Koehler and Matthews*

"Throughout Respondent's representation in the *Carter, Davis, Lewis, Strong, Neal, Stewart, Koehler,* and *Matthews* matters, representatives of Maryland General Hospital asked Respondent to provide written reports for the purpose of updating and advising the Hospital about litigation brought against it. Notwithstanding repeated requests, Respondent failed to provide written reports for the purpose of updating and advising the Hospital about litigation brought against it. Notwithstanding repeated requests, Respondent failed to provide the status reports for many months. Summaries of pending litigation were provided on or about December 15, 2000 and March 15, 2001. Those reports were misleading in that they did not reveal the pendency of motions for judgment and outstanding default orders. Further, Respondent failed to advise the Hospital in those cases that motions to compel

and/or for sanctions were filed against it and its defendant representatives or doctors.

"Respondent violated Maryland Rule of Professional Conduct 1.4 and 8.4(c) and (d).

### Hunter

"On or about June 17, 1998, Kimberly Hunter and Arnold Lee filed a complaint in the Circuit Court for Baltimore County naming [physician], Maryland General Hospital, Dr. [name deleted] and Dr. [name deleted] as Defendants, *Hunter, et al. v. Maryland General Hospital, et al.*, Case No. 03–C–98–006096. Respondent represented the Hospital, [physician] and [physician].

"Respondent failed to reply to an Order in June 2000, requiring the Hospital to pay $4,500 in deposition costs. That failure resulted in a default motion being filed against the Hospital. Respondent violated Maryland Rules of Professional Conduct 1.1, 1.3, 3.4(c) and 8.4(a)(d).

### Disciplinary Proceedings

"Petitioner was notified of Respondent's alleged misconduct by complaint dated April 5, 2001, with numerous attachments. Respondent was notified of that complaint and directed to respond by letters dated May 8, 2001, May 29, 2001 and June 11, 2001. The complaint was updated by letter dated May 25, 2001. The updated complaint was forwarded to Respondent. Again, Petitioner sought her explanation and response to the complaint. Respondent failed to respond to the Office of Bar Counsel.

"Respondent violated Maryland Rule of Professional Conduct 8.1(b) and 8.4(d).

### Mitigation

"Respondent has been a member of the Bar of Maryland for twenty-one years. During that time she practiced law without disciplinary incident and enjoyed good health. During this

time she also taught at the University of Baltimore School of Law, the University of Maryland and MICPEL.

"In approximately the Spring of 2000, Respondent was diagnosed with osteomyelitis. She also was faced with the serious prospect of loss of her leg. In June 2000, she traveled to Boston for treatment. She suffered complications from her treatment and was again hospitalized in September in Baltimore. During a trip to New York over Thanksgiving, Respondent was again hospitalized, this time on an emergency basis.

"Throughout her trying medical ordeal, the Respondent practiced law. Perhaps bravely, but, as is now apparent, misguidedly, Respondent continued her practice without adjusting for her medical condition. She refused help from her colleague and denied an inability to handle her legal practice. While not admitting to the violations of professional conduct with which she was charged, Respondent expressed remorse that 'things had slipped through the cracks' and opined that when she was ill, she should have done things differently.

### *Conclusion*

"Respondent has violated Rules of Professional Conduct 1.1; 1.3; 1.4; 3.2; 3.3(a)(1); 3.4(c)(d); 8.4(a), (c), (d)."

Neither party excepts to any findings of fact or conclusions of law. After a review of the record, we hold that the findings of fact of the hearing judge are not clearly erroneous and the hearing judge's conclusions of law are supported by the facts.

### II.

This Court has original jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 539, 810 A.2d 457, 474 (2002). In the exercise of our obligation, we conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. *See Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763–64 (2002). The factual findings of the hearing judge will not be disturbed if they are based on clear and convincing evidence. *See Attorney Griev-*

*ance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). We consider the hearing judge's proposed conclusions of law *de novo. See Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

## III.

We turn now to the appropriate sanction to be imposed. Bar Counsel recommends disbarment. Bar Counsel highlights "deceit on the part of the respondent that misled her clients into a false sense of security that ultimately resulted in their inability to defend themselves against liability, against damages, and ultimately resulted in serious financial losses as well as a taint upon individual professional reputations." Bar Counsel contends that, despite respondent's lack of prior misconduct, disbarment is appropriate because of the substantial number of complaints, the egregious nature of respondent's violations, and the harm resulting from those violations. Although petitioner concedes that the hearing judge determined that respondent's osteomyelitis and several hospitalizations were mitigating factors, petitioner argues that such diagnosis was unsubstantiated hearsay and witnesses testified that respondent never expressed to others that she suffered from any conditions that limited her ability to represent her clients.[12]

Before this Court, Respondent recommends that she be permitted to continue to practice.

 Bar Counsel has the burden of establishing the allegations by clear and convincing evidence. Md. Rule 16–757(b). Respondent has the burden of proving the existence of miti-

---

**12.** Although petitioner contends that respondent's claim of suffering from an illness was "unsupported and unsubstantiated," the hearing judge found by clear and convincing evidence that respondent was diagnosed with osteomyelitis in the spring of 2000, "was faced with the serious prospect of loss of her leg," suffered complications from her medical treatment, and was hospitalized at least twice in the fall of 2000. Petitioner filed no exceptions to these findings and thus, not having been shown to be clearly erroneous, the hearing judge's findings are *prima facie* correct.

gating circumstances by a preponderance of the evidence. *Id.* On review, we keep in mind that the findings of the trial judge are *prima facie* correct and will not be disturbed unless clearly erroneous. *Garfield,* 369 Md. at 97, 797 A.2d at 764.

 The purpose of sanctioning an attorney is to protect the public rather than to punish the errant attorney. *See Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). Attorney disciplinary proceedings also are aimed at deterring other attorneys from committing violations of the Rules of Professional Conduct. *Id.* at 474–75, 800 A.2d at 789. The severity of the sanction depends on the particular facts and circumstances of each case, including consideration of any mitigating factors or aggravating factors. *See Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 416–18, 800 A.2d 747, 755 (2002). On occasion, in considering the appropriate sanction to be imposed, we have referred to the ABA Standards for Imposing Lawyer Sanctions. *Attorney Grievance Comm'n v. Santos,* 370 Md. 77, 88, 803 A.2d 505, 511 (2002); *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 28, 741 A.2d 1143, 1158 (1999); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996). The Standards set out a framework for consideration of discipline matters, providing as follows:

(1) What ethical duty did the lawyer violate?

(2) What was the lawyer's mental state?

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?

(4) Are there any aggravating or mitigating circumstances? [13]

---

**13.** ABA Standard 9.21 defines "Aggravation" as "any considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.31 defines "Mitigation" as "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standards for Imposing Lawyer Sanctions, *reprinted in* ABA Compendium of Professional Responsibility Rules and Standards, 352–53 (1999).

See ABA Standards for Imposing Lawyer Sanctions, *reprinted in* ABA Compendium of Professional Responsibility Rules and Standards, 338–39, 344 (1999).

We first address the duty violated by respondent and respondent's mental state at the time of the misconduct. Respondent does not deny the misconduct in this case. In addition to her lack of competency, lack of diligence, and failure to communicate with clients, she lacked candor toward the Circuit Court and initially failed to cooperate with Bar Counsel. Respondent's conduct was not an isolated incident, but was a pattern of misconduct. In considering respondent's mental state, we note that all of the conduct which is the subject of these proceedings occurred while respondent was ill and was under treatment for osteomyelitis. The hearing judge found that throughout respondent's illness, she practiced law, "[p]erhaps bravely, but, as is now apparent, misguidedly ... without adjusting for her medical condition." Respondent did not have a dishonest motive. Nonetheless, her client, the Hospital, and the individual physicians were injured by her conduct.

Next, we consider whether there are any aggravating or mitigating factors. The main aggravating factor in this case is respondent's misrepresentations to her client that led the client into a false sense of security, ultimately resulting in the client's inability to present a proper defense against liability.

We have found that mitigation includes the following:

"absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Attorney Grievance Comm'n v. Thompson,* 367 Md. 315, 330, 786 A.2d 763, 772–73 (2001) (quoting *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001) (quoting *Glenn,* 341 Md. at 488–89, 671 A.2d at 483 (citations omitted))).[14]

In mitigation, respondent was admitted to the Bar of this Court on May 25, 1982. She has had no prior offenses. She has been a respected adjunct faculty member at the University of Baltimore Law School, a lecturer for MICPEL, a faculty member at the University of Maryland Medical School, and has served on many committees of the Maryland State Bar Association. All of her misconduct occurred during the period of her illness. She had no dishonest motive. Respondent has expressed remorse and, as she has her illness under control, is unlikely to reoffend. "As to the repetition of violative conduct, we have held that an attorney's voluntary termination of the charged misconduct, when accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, may be evidence that the attorney will no longer engage in such misconduct." *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 422–23, 818 A.2d 1108, 1116 (2003).

In addition to the presence of aggravating and mitigating factors, we consider our prior cases. We have noted that "a less severe sanction than that ordinarily dictated may be appropriate when an attorney is able to establish the existence of compelling extenuating circumstances." *Attorney Grievance Comm'n v. Kenney,* 339 Md. 578, 588, 664 A.2d 854, 858 (1995). At the same time, in attorney grievance cases involving "intentional dishonesty, misappropriation . . ., fraud, stealing, serious criminal conduct and the like," we have held that disbarment is warranted absent "anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter

---

14. These mitigating factors are included in ABA Standard 9.32. ABA Standards for Imposing Lawyer Sanctions, *reprinted in* ABA Compendium of Professional Responsibility Rules and Standards, 353–54 (1999).

inability to conform his or her conduct in accordance with the law and with the MRPC." *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001) (citing *Kenney*, 339 Md. at 594, 664 A.2d at 862).

Client neglect is a very serious violation of the Rules of Professional Conduct and of the duty owed to the client. Persistent neglect may be grounds for disbarment. *See, e.g., Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 347 A.2d 556 (1975). We noted there, however, that:

> "Where an attorney has been shown to have been negligent, or inattentive to his client's interests, or to have exhibited a lack of professional competency in the handling of a client's affairs, in violation of the canons or of a statute, the imposition of some disciplinary sanction against him may be warranted; the extent of the discipline to be applied, however, is generally dependent upon the severity of the conduct and the particular facts and circumstances surrounding it. In determining the degree of discipline to be imposed for such conduct, it has been held proper not only to consider such circumstances as might mitigate or extenuate the offense, but also proper to consider the attorney's prior history of misconduct and any antecedent sanctions which may have been imposed. *See* Annot. 96 A.L.R.2d 823, 828–29, 853, *supra. Cf. Bar Assoc. of Balto. City v. Dearing*, 274 Md. 66, 332 A.2d 649 (1975) (where neglect, without any prior history of misconduct, was found to be grounds for a one-year suspension.)"

*Id.* at 362, 347 A.2d at 561. In cases involving client neglect, we have considered the presence of aggravating and mitigating factors and imposed sanctions in accordance with the circumstances. *See Attorney Grievance Comm'n v. Manning*, 318 Md. 697, 704–05, 569 A.2d 1250, 1253–54 (1990) (disbarring an attorney for "willful and flagrant neglect" of his clients' affairs over a more than two-year period, where the attorney had a prior record and there were no mitigating circumstances); *Garfield*, 369 Md. at 107, 797 A.2d at 769–70 (imposing an indefinite suspension with a right to reapply after thirty days on an attorney with a drug addiction whose "professional

lapses" resulted in the dismissal or barring of seven cases); and *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 585, 745 A.2d 1045, 1053–54 (2000) (noting the attorney's remorse for her misconduct and holding that a public reprimand would "serve the purpose of protecting the public just as well as a short suspension").

It is helpful to consider *Attorney Grievance Commission v. Finnesey*, 283 Md. 541, 391 A.2d 434 (1978), a case involving an attorney's neglect and misrepresentations to his client. In *Finnesey*, the attorney falsely advised his client that a petition had been filed and misrepresented to the client that at least three different dates had been set for a hearing on the petition. Ultimately, the client retained new counsel and suffered no monetary loss. After a disciplinary hearing, the panel found that the attorney "was dilatory in performing his duties and sought to cover up his neglect by assuring the client that everything possible had been done to perfect her claim." *Id.* at 546, 391 A.2d at 436. The panel determined that "[s]uch conduct falls somewhat short of dishonesty, fraud, and deceit which three require a debased morality coupled with an intention to injure another person." *Id.* at 545, 391 A.2d at 436. We adopted the opinion that the attorney in that case should not be disbarred. *Id.* at 547, 391 A.2d at 437.

In the case at bar, respondent's violation of Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) closely resembles the attorney's conduct in *Finnesey*.[15] Respondent misrepresented to one client, the Hospital, the status of her cases in order to cover up her neglect. In one of her cases, respondent misrepresented to the court her need for continuances. Respondent's conduct is a most serious transgression. *See Attorney Grievance Comm'n v. Lane*, 367 Md. 633, 647–48, 790 A.2d 621, 629 (2002) (finding the gravamen of the case to be the attorney's pattern of "continued

---

**15.** The hearing panel in *Attorney Grievance Comm'n v. Finnesey*, 283 Md. 541, 391 A.2d 434 (1978), found that the attorney had violated DR 1–102(a)(4), the precursor to Maryland Rule of Professional Conduct 8.4(c). Both provisions state that a lawyer shall not engage in "conduct involving dishonesty, fraud, deceit or misrepresentation."

deceitful misrepresentations of the most egregious nature," finding no mitigation for this pattern, and ordering disbarment); *see also Vanderlinde*, 364 Md. at 418, 773 A.2d at 488 (ordering disbarment where an attorney stole money from an employer and stating that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct"); *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 51, 785 A.2d 1260, 1268–69 (2001) (notwithstanding absence of mitigating factors, indefinite suspension imposed, where attorney misrepresented case status to client and failed to cooperate with the Attorney Grievance Commission).

Petitioner relies on *Attorney Grievance Commission v. Wallace*, 368 Md. 277, 793 A.2d 535 (2002), as support for its contention that respondent's behavior merits the ultimate sanction of disbarment. In *Wallace*, the hearing judge found by clear and convincing evidence that the attorney had violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(a)(2) and (d), 3.2, 8.1(b), and 8.4(c) and (d). Six complaints formed the basis for the Petition for Disciplinary Action filed in that case. In addition to neglecting client matters, failing to communicate with his clients, and making misrepresentations to his clients—transgressions of which respondent in the case *sub judice* is also culpable, the attorney charged unreasonable fees, failed to account for and return monies, and failed to respond to Bar Counsel's numerous inquiries and a subpoena. The attorney appeared for neither the evidentiary hearing nor oral argument before this Court. Most significant is that the hearing judge and this Court found no mitigating circumstances.

The primary distinction between *Wallace* and the instant case is the lack of mitigating factors in the former case. In addition, the attorney in *Wallace* committed violations over a more than two-year period, whereas respondent's actions in this case roughly corresponded with the onset and duration of her physical illness and medical treatments over approximately a one-year period. Finally, respondent has expressed remorse for her behavior, in contrast to the attorney in *Wallace* whose failure to appear before either the hearing

judge or this Court evidenced a blatant disregard toward the proceedings.

In cases where the attorney suffered from a serious physical or mental illness, we rarely impose the ultimate sanction of disbarment absent misappropriation of funds. The weight we accord to a physical or mental illness depends in part on whether the condition was causally related to the attorney's misconduct and the seriousness of the charges.

In *Attorney Grievance Commission v. Murray*, 301 Md. 506, 483 A.2d 772 (1984), the attorney, who was suffering from a physical illness, unaccompanied by any mental illness, neglected client affairs and made misrepresentations to one of his clients. His illness consisted of arterial sclerosis in his legs which prevented him from walking and required hospitalization and an operation. *Id.* at 509, 483 A.2d at 773. Considering the severity of the attorney's health problems, which spanned more than a one-year period, we imposed a public reprimand, even though the attorney had previously received two private reprimands for neglect of client affairs and related misconduct. *Id.* at 513–14, 483 A.2d at 775–76.

In *Attorney Grievance Commission v. Willcher*, 287 Md. 74, 411 A.2d 83 (1980), the attorney, who suffered from manic depression and hypothyroidism, acted incompetently, neglected a legal matter, and handled a legal matter without adequate preparation. The attorney did not engage in dishonest behavior, although at the time of the hearing he was suspended from the practice of law for sixty days for misrepresentation to a client and unjustified retention of a retainer. *Id.* at 79, 411 A.2d at 86. We ordered an indefinite suspension after accepting the hearing judge's finding that the attorney's behavior was not entirely due to illness. *Id.* at 79–80, 411 A.2d at 86.

We also ordered an indefinite suspension in *Santos*, 370 Md. 77, 803 A.2d 505, where the attorney neglected legal matters and misappropriated client funds. The hearing judge found that the attorney's neglect "was exacerbated by undiagnosed physical and mental health problems," *id.* at 84, 803 A.2d at

509, and failed to affirmatively find a violation of Rule 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), *id.* at 81, 803 A.2d at 507. In rejecting a sanction of disbarment, we placed significance on the hearing judge's characterization of the attorney's conduct in failing to return unearned fees as "neglect," *id.* at 87–88, 803 A.2d at 511, and also noted that the attorney cooperated with the investigation, accepted responsibility for his actions, and had no disciplinary record, *id.* at 84–87, 803 A.2d at 509–510.

 Considering all of the circumstances in this case, we conclude that the appropriate sanction to be imposed is an indefinite suspension. Although respondent's misconduct was serious and the client suffered harm, respondent's conduct occurred when she was suffering from a serious physical illness which appears to be causally connected to her misconduct. Moreover, there was no misappropriation of funds involved in the present case. As we have indicated, the purposes of discipline are to protect the public and to deter similar conduct by other lawyers. Having considered respondent's misconduct, the ABA Standards for Imposing Lawyer Sanctions, the aggravating and mitigating circumstances, and our prior cases, the appropriate sanction is an indefinite suspension from the practice of law.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(B), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST PATTI DIANE GILMAN WEST.*

BELL, C.J., CATHELL and HARRELL, JJ., dissent.

HARRELL, J. dissenting.

The majority generously finds that "respondent's conduct occurred when she was suffering from a serious physical illness which appears to be causally connected to her misconduct." (Majority (Maj.) op. at 418). In this regard, the

majority oversteps the boundaries of the Court's role in this case. "The hearing court's findings of fact are prima facie correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Griev. Comm'n v. Wallace*, 368 Md. 277, 288, 793 A.2d 535, 542 (2002). Judge Allison, the hearing judge, in her findings of fact, did not find that Respondent's actions were caused by her illness. Rather, Judge Allison quite clearly rejected Respondent's battle with osteomyelitis as a legal cause or mitigating factor with regard to the many and serious professional lapses proven in this case:

> Throughout her trying medical ordeal, the Respondent practiced law. Perhaps bravely, but, as is now apparent, misguidedly, Respondent continued her practice without adjusting for her medical condition. She refused help from her colleague and denied an inability to handle her legal practice. While not admitting to the violations of professional conduct with which she was charged, Respondent expressed remorse that 'things had slipped through the cracks' and opined that when she was ill, she should have done things differently.

*Id.* (Maj. op. at 409). West filed no exceptions to the hearing judge's findings.[1]

We recently held that exculpatory factors "cause" misconduct only when they alter the mental state of an attorney to a degree that excuses the conduct. *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001). Nothing in the record indicates that Respondent's illness affected her mental condition or her judgment beyond that of the predictable stress any human being facing a serious medical condition experiences. While naturally one must sympathize with the difficult medical situation West confronted, stress alone does not mitigate the exceedingly poor judgment

---

1. Md. Rule 16–759(b)(2)(A), governing disposition of an attorney disciplinary case on review by this Court, provides: "If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."

demonstrated by her consistent pattern, over several months, of neglect of her duties to the court and to her clients, exacerbated by her lying to cover up her failures. Disbarment is the appropriate sanction for this type of misconduct.

West engaged in a consistent pattern of conduct that included "conduct involving dishonesty, fraud, deceit or misrepresentation." MRPC 8.4(c). It is well settled that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct." *Attorney Griev. Comm'n v. Cafferty*, 376 Md. 700, 720, 831 A.2d 1042, 1054 (2003). The majority in the present case concedes that, "[r]espondent's conduct is a most serious transgression," yet fails to note that that conduct constituted a pattern of serious deceitful conduct over an extensive period of time. (Maj. op. at 415). The hearing judge found that West, for more than six months, violated Rule 8.4(c) in the course of her representation of her clients in eight separate matters. West produced misleading reports for her clients and concealed the status of cases from her clients. In addition, she concealed her medical condition from her partners, opposing parties, and the various courts before which she practiced.

Even beyond her dishonesty, West's pattern of extreme neglect caused her clients serious harm. "[W]illful and flagrant neglect of a client's affairs is, in and of itself, the kind of misconduct by an attorney which can lead to disbarment." *Attorney Griev. Comm'n v. Wallace*, 368 Md. 277, 291, 793 A.2d 535, 544 (2002) (quoting *Attorney Griev. Comm'n v. Manning*, 318 Md. 697, 704, 569 A.2d 1250, 1253 (1990)). West essentially abandoned clients in nine matters for several months and consistently lied about her actions, thus preventing her clients from learning the scope of her neglect or from taking timely remedial measures. As a result of her failure to perform even her most basic professional duties and her concealment of that failure, orders of default were entered in at least four cases, leading to at least three default judgments against her clients. Further, West's clients were barred from presenting certain expert witnesses at trial on at least two occasions and were forced into settlements in at least five

cases. Two of those settlements, in the *Davis* matter and in the *Koehler* matter, were particularly unfavorable insofar as they were more expensive for her clients than settlement offers that she previously failed to forward to them for consideration. When all of the misconduct is itemized, the hearing judge found that West committed seventy-four separate violations of the Maryland Rules of Professional Conduct.

Perhaps the most serious damage caused by West's deceit and inexcusable neglect was to the reputations of her clients. West represented Maryland General Hospital and several individual health care professionals, including doctors, who worked at the Hospital. As a result of West's actions, her clients either effectively were prevented from presenting a defense or had their defenses substantially undercut in at least nine professional malpractice actions. The settlements and default judgments against the medical personnel and the Hospital will stain their records and reputations for years to come. West quite likely could have prevented these losses had she disclosed her condition and asked for assistance from her law firm colleagues.

As noted above, the normal sanction for client neglect of this scale is disbarment. In *Wallace* we disbarred an attorney who, in six separate cases, committed similar acts of neglect and misrepresentation as West in the nine matters described in the hearing judge's findings of fact in this case. Wallace failed to file required documents with the courts hearing five of his cases. 368 Md. at 282–88, 793 A.2d at 538–42. Three complaints Wallace filed were dismissed for failure to prosecute. *Id.* Wallace failed to inform his clients that those three cases were dismissed. *Id.* The Court also found that Wallace made misrepresentations regarding the status of his cases and that he failed to return in a timely manner fees owed to his clients. *Id.* We concluded in *Wallace* that:

> The record in the case at bar does not indicate that respondent has received any previous reprimands or sanctions from this Court; nevertheless, the volume and severity of the complaints against respondent lead us to conclude that the appropriate sanction against respondent is disbarment.

Respondent has engaged in a pattern of conduct that only the most severe sanction of disbarment will provide the protection to the public that this procedure is supposed to provide.

368 Md. at 293, 793 A.2d at 545.

Given the lack of exceptions by West to the hearing judge's findings of fact and conclusions of law, the only issue before us is the appropriate sanction to impose. The majority claims that:

In cases where the attorney suffered from a serious physical or mental illness, we rarely impose the ultimate sanction of disbarment absent misappropriation of funds. The weight we accord to a physical or mental illness depends in part on whether the condition was causally related to the attorney's misconduct and the seriousness of the charges.

(Maj. op. at 417). This is an inaccurate representation of our cases generally and, most certainly, of our recent cases. As the majority points out, the purpose of sanctioning attorneys is to protect the public and establish standards of acceptable versus unacceptable conduct for the legal profession, rather than to punish the particular errant attorney in a given case. *Id.* at 411. The mere fact that an attorney "suffered from a serious physical or mental illness" is not dispositive; we only have found illness to be a mitigating factor where it *caused* the misconduct.

As admitted in *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), our prior responses to potentially mitigating factors involving a respondent's mental and physical health at the time of misconduct were somewhat inconsistent. 364 Md. at 405–07, 773 A.2d at 480–81. In *Vanderlinde,* however, we attempted to set a single standard for future consideration of such mitigation arguments in "cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like[.]" 364 Md. at 413, 773 A.2d at 485. In such cases, as Judge Cathell wrote for us,

we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly

debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct and *that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC.* Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment

364 Md. at 413–14, 773 A.2d at 485 (emphasis added). It was our intention in *Vanderlinde* to sweep behind us inconsistent prior cases related to consideration of such mitigating factors, at least insofar as the misconduct in the particular case involved "dishonesty, stealing, intentional misappropriation, fraud, serious criminal offenses, and the like." 364 Md. at 414, 773 A.2d at 485–86. West violated rule 8.4(c) and engaged in other dishonest acts. Therefore, we should adhere to the *Vanderlinde* standard in the present case.

In this case, the osteomyelitis that West claims as a mitigating factor is a painful bone infection that normally does not affect the mind directly. THE MERCK MANUAL 1343–46 (16th ed.1992). As such, osteomyelitis is not the kind of physical health condition that would cause West's utter inability to conform her conduct in accordance with the law and with the MRPC, and it should not be treated as a mitigating factor to reduce the ordinary sanction for the scale and type of misconduct demonstrated by this case.

Our purpose in *Vanderlinde* was to terminate a perpetuation of the sometimes conflicting applications in our prior cases. Yet, a scant two years later, the majority here regresses to 1978 and invigorates *Attorney Griev. Comm'n v. Finnesey,* 283 Md. 541, 391 A.2d 434 (1978), which it claims "closely resembles the attorney's conduct" in this case. (Maj. op. at 415). *Finnesey* involved an attorney's misconduct in a single case where the client "suffered no monetary loss." 283 Md. at 546, 391 A.2d at 436. By comparison, West appears to have cost her clients many thousands of dollars.[2] Of the pre-

---

2. She may have cost her clients $75,000 in just the *Koehler* matter. West failed to forward an early $75,000 settlement offer to her clients

*Vanderlinde* cases, a closer match is *Attorney Griev. Comm'n v. Short,* 303 Md. 317, 493 A.2d 362 (1985), where we found that an attorney's heart attack and financial difficulties did not excuse misappropriation of funds. Where the attorney in *Finnesey* "attributed his neglect of Mrs. Bentley's case on mental depression brought about by personal financial reverses," *Finnesey,* 283 Md. at 545, 391 A.2d at 436, the attorney in *Short* attributed his misconduct to a physical ailment similar to the one West suffered. *Short,* 303 Md. at 319, 493 A.2d at 362–63. The more important point, however, is that our pre-*Vanderlinde* cases were so inconsistent that a case can be found to bootstrap just about any desired result. That is the haven resorted to by the majority here.

The argument that osteomyelitis "caused" West to engage in her pattern of neglect and deceit is a strained one at best. I suspect other members of the Maryland Bar, whether in solo, small firm, medium size firm, or large firm practice, deal constructively and positively, day-in and day-out, with serious illness as it impacts on their pursuit of their law practices. Osteomyelitis very well may have caused West to be unable physically to perform her duties to the court and to her clients. If that was the case, she should have informed the courts, clients, and attorneys with whom she worked that she could no longer, or for a time, manage her caseload. The record reflects that West unilaterally rejected the notion of seeking help from her colleagues and that she hid her condition from those with which she came into contact. The misconduct in this case was caused by exceedingly poor judgment, not osteomyelitis. I would find that West's misconduct neither was caused by osteomyelitis nor mitigated sufficiently by her illness. Therefore, I would mete out the usual sanction of disbarment for misconduct of the scale and type in which she engaged.

Chief Judge BELL and Judge CATHELL have authorized me to state that they join in this dissent.

---

for consideration. After a default judgment as to liability was taken, the client settled the matter for $150,000.