*Attorney Grievance Commission of Maryland v. Thomas Wesley Felder, II*, Miscellaneous Docket AG No. 33, September Term, 2013.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT** – Respondent Thomas Wesley Felder, II, violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in his capacity as a representative of Martrell and Timothy Matthews and Bernadine Ekeh. Felder failed to perform any legal services for his clients after accepting a retainer, ignored his clients' requests for updates and attempts to terminate his representation, failed to maintain his clients' funds in trust, abandoned representation of his clients without communication, failed to return unearned fees until after a client had filed a complaint with the Attorney Grievance Commission, and assisted the unauthorized practice of law. Such conduct violated MLRPC 1.1; MLRPC 1.3; MLRPC 1.4(a) and (b); MLRPC 1.15(a) and (c); MLRPC 1.16(d); MLRPC 5.5(a); MLRPC 8.1(b); MLRPC 8.4(a), (c), and (d); and Maryland Rules 16-606.1 and 16-604. Taken together, Felder's violations warrant disbarment.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 33

September Term, 2013

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

THOMAS WESLEY FELDER, II

Harrell
Battaglia
Greene
Adkins
McDonald
Watts
Raker, Irma S. (Retired,
    Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed: October 22, 2014

Petitioner, Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondent, Thomas Wesley Felder, II.[1] Bar Counsel charged that Felder, in connection with his representation of Martrell and Timothy Matthews and of Bernadine Ekeh, engaged in professional misconduct by accepting retainers from these clients but then abandoning them after performing little or no work on their cases. Bar Counsel alleged that in the course of his representation of these clients, Respondent violated a number of Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[2]

As permitted by Maryland Rule 16-752(a), we referred the petition to the Honorable Michael R. Pearson of the Circuit Court for Prince George's County, to conduct an evidentiary hearing and make findings of fact and conclusions of law. Felder did not attend the hearing conducted on April 9, 2014 by Judge Pearson. After that hearing, the Judge issued the findings of fact and proposed conclusions of law set forth below.

---

[1] The Attorney Grievance Commission's investigation of Felder was triggered by the complaints of Martrell and Timothy Matthews and Bernadine Ekeh.

[2] Bar Counsel charged that Respondent violated the following Rules: (1) Rule 1.1 (Competence); (2) Rule 1.3 (Diligence); (3) Rule 1.4(a) and (b) (Communication); (4) Rule 1.15(a) and (c) (Safekeeping Property); (5) Rule 1.16(d) (Declining or Terminating Representation); (6) Rule 5.5(a) (Unauthorized Practice of Law; Multijurisdictional Practice of Law); (7) Rule 8.1(b) (Bar Admission and Disciplinary Matters); (8) Rule 8.4(a), (c), and (d) (Misconduct); and (9) Maryland Rules 16-606.1 (Attorney trust account record-keeping) and 16-604 (Trust account – Required deposits).

## THE HEARING JUDGE'S FINDINGS OF FACT

Judge Pearson made the following findings of fact by clear and convincing evidence.[3]

Martrell and Timothy Matthews ("Mr. and Mrs. Matthews") first met with Felder in August 2011 to discuss their desire to file claims against Mid-Atlantic Home Builders ("Mid-Atlantic") for breach of contract, professional negligence, fraud, and misrepresentation. They paid Felder a $300 consultation fee for the first meeting. In November 2011, Mr. and Mrs. Matthews signed a retainer agreement, agreeing to pay Felder $5,000 for his services at an hourly rate of $250. They paid Felder $2,500 by check and agreed to pay the remaining $2,500 the following month.

In December, Felder informed his clients that he was closing his practice but assured them that he would complete their representation.[4] The hearing judge found as to Mr. and Mrs. Matthews's payments that:

> Mr. Felder received the funds from Mr. and Mrs. Matthews and did not deposit them in trust and did not maintain them in trust until earned.
>
> Mr. Felder did not obtain Mr. and Mrs. Matthews' informed consent to the deposit or maintenance of their fees other than in an attorney trust account.

---

[3] We have omitted portions of Judge Pearson's findings not crucial to our opinion.

[4] The hearing judge also found that at the December meeting, Felder indicated to Mr. and Mrs. Matthews that he would waive a portion of his fee if they invested in his new venture. He later withdrew the offer after they had invested, informing Mr. and Mrs. Matthews that they owed the remaining amount, which they subsequently paid in January 2012.

> [Felder] failed to maintain proper records relating to the deposit, maintenance, and disbursement of client funds.

Soon after informing his clients that he was closing his practice, Felder introduced Mr. and Mrs. Matthews to Monique Pressley—a District of Columbia attorney not licensed in Maryland—over whom Felder had supervisory authority. Judge Pearson found that "Ms. Pressley gave the clients the impression that she was licensed to practice in Maryland" and performed work for Felder's clients by preparing a complaint against Mid-Atlantic.

Beginning in January 2013, Mr. and Mrs. Matthews had increasing difficulty reaching Felder and obtaining status updates regarding their case. As the hearing judge found:

> On January 23, 2012, Mr. and Mrs. Matthews sent [Felder] an email requesting an update on their case. [Felder] replied on January 25, 2012, advising Mr. and Mrs. Matthews that the complaint was sent to Mid-Atlantic on January 7, 2012 and that Mid-Atlantic had until February 7th to respond or suit would follow.
>
> On February 10, 2012, Mr. and Mrs. Matthews followed up with [Felder] through email and requested information on the status of their case. [Felder] did not reply to their email.
>
> Between February and April 2012, Mr. and Mrs. Matthews made several attempts to contact [Felder] through phone calls and emails but were unable to reach him.
>
> On or about March 26, 2012, Mr. and Mrs. Matthews contacted Ms. Pressley through email and requested a copy of the complaint sent to Mid-Atlantic but did not receive a response.
>
> On April 5, 2012, Mr. and Mrs. Matthews again sent a second email to Ms. Pressley requesting a copy of the documentation submitted to Mid-Atlantic on their behalf. Mr. and Mrs.

> Matthews did not receive any documents from [Felder's] office.
>
> On April 11, 2012, Mr. and Mrs. Matthews drafted a termination letter to [Felder] and attempted to deliver it to [Felder's] Bowie office. [Mr. and Mrs. Matthews] were advised by the new office tenants that [Felder] no longer occupied the office space.
>
> [Felder] failed to notify Mr. and Mrs. Matthews that he had closed, and moved out of, his law firm.
>
> On April 11, 2012, Mr. and Mrs. Matthews forwarded a termination letter to [Felder] through email and forwarded a copy to Ms. Pressley.
>
> [Felder] did not respond to Mr. and Mrs. Matthews's letter or email.
>
> Mr. and Mrs. Matthews also mailed the termination letter via certified mail. The return receipt card reflects the letter was received and signed for on April 20, 2012.
>
> [Felder] did not respond to the certified letter sent by Mr. and Mrs. Matthews.

Eventually, in April 2012, an employee at Felder's firm contacted Mr. and Mrs. Matthews to return to them a binder of documents the clients had provided in reference to their case as well as a $1,000 refund of legal fees "representing a portion of the unearned fees" Mr. and Mrs. Matthews had paid Felder. The hearing judge found that at no time did Felder reply to his clients' phone calls or emails.

Felder followed a similar pattern with Bernadine Ekeh ("Ms. Ekeh"), who retained Felder to assist her with a loan modification in July 2011. She paid Felder a flat rate of

4

$2,800 for representation not to exceed 10 hours of work at an hourly rate of $250.[5] Judge

Pearson found that Ms. Ekeh experienced difficulty contacting Felder and receiving

information regarding her loan modification:

> Between August 2011 and May 2012, Ms. Ekeh left several
> messages on [Felder's] answering machine at the law firm's
> office number. [Felder] did not return [Ms. Ekeh's] calls.
>
> On or about May 31, 2012, [Felder] returned Ms. Ekeh's call.
> [Felder] advised Ms. Ekeh that his office had relocated but did
> not give her a new address. During this conversation, Ms. Ekeh
> advised [Felder] that she had received correspondence
> rejecting her loan modification. [Felder] asked Ms. Ekeh to
> fax him the letter she received. Ms. Ekeh faxed the letter to
> [Felder] but did not hear back from him.

As with Felder's representation of Mr. and Mrs. Matthews, the hearing judge found

that he failed to keep Ms. Ekeh's funds in trust or to maintain adequate records:

> [Felder] admits in his response that he did not maintain Ms.
> Ekeh's legal fees in trust. He did not have Ms. Ekeh's consent
> to maintain the fees in any account other than a trust account.
>
> *  *  *
>
> [Felder] failed to maintain proper records relating to the
> deposit, maintenance, and disbursement of client funds.

Although Felder failed to communicate with Ms. Ekeh or perform work for her, he

refunded her fees in their entirety, but only after Bar Counsel commenced its investigation.

The hearing judge found that Felder never communicated to his clients that he had

closed his practice and vacated his office:

---

[5] The $2,800 also included a $300 initial consultation fee.

[Felder] stated in his response that his office transitioned out of the legal profession from December 2011 until August 2012, and his last case was opened around April 2012.

* * *

[Felder] further stated that he vacated his office space and ceased his legal practice in June 2012. [Felder] did not address in his response his continuous failure to respond to requests for information from the client.

The Attorney Grievance Commission received a complaint from Mr. and Mrs. Matthews in May 2012 and one from Ms. Ekeh in June 2012. In the course of investigating both complaints, Bar Counsel found Felder similarly unresponsive. Judge Pearson found as to the complaint of Mr. and Mrs. Matthews:

[Felder] provided an initial response to the Attorney Grievance Commission on July 19, 2012. [Felder's] response did not address his failure to respond timely to two letters previously sent to him regarding the grievance.

During Bar Counsel's investigation, [Felder] knowingly failed to respond to multiple requests for information from a disciplinary authority.

* * *

[Felder] has not responded or communicated with the office of Bar Counsel concerning the complaint filed by Mr. and Mrs. Matthews after his initial response of July 19, 2012.

As to Ms. Ekeh's complaint, Judge Pearson found:

During Bar Counsel's investigation, [Felder] knowingly failed to respond to multiple requests for information from a disciplinary authority.

On November 7, 2012, [Felder], through counsel, submitted a response to Bar Counsel.

6

[Felder] has not responded or communicated with the office of Bar Counsel concerning the complaint filed by Ms. Ekeh after his response of November 7, 2012.

From these facts, the hearing judge concluded that Felder violated MLRPC 1.1; 1.3; 1.4(a) and (b); 1.15(a) and (c); 1.16(d); 5.5(a); 8.1(b); 8.4(a), (c), and (d); and Maryland Rules 16-606.1 and 16-604.

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

MLRPC 1.1 requires attorneys to provide competent representation,[6] and MLRPC 1.3 demands that they act with diligence.[7] As to these rules, Judge Pearson concluded:

> [Felder] . . . failed to act with the requisite legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. In November 2011, [Felder] was retained by Mr. and Mrs. Matthews to represent them in claims against [Mid-Atlantic.] [Felder] did not perform any legal services for Mr. and Mrs. Matthews. Mr. and Mrs. Matthews attempted to contact [Felder] but were unable to reach him to inquire about their case.

Additionally:

> [Felder] failed to provide competent representation to Ms. Ekeh in that he failed to act with the requisite legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. In August 2011, [Felder] was retained by

---

[6] **Rule 1.1 Competence.**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[7] **Rule 1.3 Diligence.**
A lawyer shall act with reasonable diligence and promptness in representing a client.

Ms. Ekeh to assist her in a loan modification. On August 3, 2011, [Felder] was paid $2,800 in legal fees. Ms. Ekeh had several questions regarding her case and attempted to reach [Felder] after that initial meeting. Respondent did not return the client's calls.

MLRPC 1.4 requires attorneys to communicate with their clients.[8] The trial court identified many instances in which Felder failed to act in accordance with this rule. Specifically:

[Felder] failed to return Mr. and Mrs. Matthews' calls and messages left on his answering machine and with his staff. Mr. and Mrs. Matthews also contacted Ms. Monique Pressley, a District of Columbia attorney, who worked with [Felder]. Mr. and Mrs. Matthews left messages with Ms. Pressley but did not hear back from [Felder]. Mr. and Mrs. Matthews attempted to reach [Felder] by phone, text message, and emails. Mr. and Mrs. Matthews mailed a certified termination letter to [Felder]. Mr. and Mrs. Matthews attempted to deliver the letter to his law office and found that [Felder] had vacated the office without giving his clients any notice. [Felder] failed to respond to Mr. and Mrs. Matthews' written termination letter

---

[8] **Rule 1.4 Communication.**
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

requesting information as well as the return of their documents and the legal fees paid in full.

* * *

[Felder] failed to comply promptly with Ms. Ekeh's reasonable requests for information about her matter[.] During the course of [Felder's] representation of Ms. Ekeh, he repeatedly failed to keep Ms. Ekeh reasonably informed about the status of her case. Ms. Ekeh attempted to reach [Felder] by phone and text message. [Felder] failed to communicate with Ms. Ekeh regarding the status of her case. [Felder] failed to notify Ms. Ekeh that he closed his law practice and closed his office.

MLRPC 1.15 requires attorneys to maintain their clients' property in safekeeping.

Concluding that Felder violated Rule 1.15(a) and (c),[9] Judge Pearson wrote:

[Felder] failed to hold property of Mr. and Mrs. Matthews in a trust account and failed to maintain complete records of the funds paid by Mr. and Mrs. Matthews for the representation.

* * *

---

[9] **Rule 1.15 Safekeeping Property.**
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
* * *
(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

9

[Felder] fail[ed] to hold property of Ms. Ekeh in a trust account and to maintain complete records of the funds paid by Ms. Ekeh for the representation. On August 3, 2011, Ms. Ekeh paid [Felder] his entire fee of $2,800 by credit card. [Felder] did not deposit the fees in trust and did not maintain the fees in trust until earned. [Felder] did not obtain Ms. Ekeh's informed consent in writing not to deposit the fees in trust.

MLRPC 1.16 requires attorneys to protect their clients' interests when declining or terminating representation. The hearing judge concluded that Felder violated 1.16(d)[10]:

> [Felder] failed to notify Mr. and Mrs. Matthews that he would not handle the case for which he was retained. [Felder] abandoned Mr. and Mrs. Matthews' case and did not communicate with them after receiving payment in full for his services. Upon termination of representation, [Felder] failed to take steps necessary to protect Mr. and Mrs. Matthews' interests by failing to return their documents in response to their requests. [Felder] failed to return any of the legal fees paid to him.
>
> * * *
>
> [Felder] abandoned Ms. Ekeh's case and did not communicate with her after receiving payment in full for his services. Upon termination of representation, [Felder] failed to timely return any of the legal fees paid to him.

---

[10] **Rule 1.16 Declining or Terminating Representation.**
* * *
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

In part, MLRPC 5.5 prohibits attorneys from aiding the unauthorized practice of law. The hearing judge found that Felder violated Rule 5.5(a)[11]:

> [Felder] assisted Ms. Pressley in the unauthorized practice of law knowing that Ms. Pressley is not licensed to practice in Maryland. [Felder] stated to Mr. and Mrs. Matthews that Ms. Pressley was his partner at the law firm and that she would assist in handling their case. The evidence reveals that Ms. Pressley had direct contact with the clients. [Felder] had knowledge of Ms. Pressley's actions and he supported her involvement in the case.

MLRPC 8.1 prohibits attorneys from failing to respond to inquiries for information from a disciplinary authority. Judge Pearson concluded that Felder violated Rule 8.1(b)[12]:

> [Felder] knowingly failed to respond to lawful demands for information from a disciplinary authority when he did not respond to Bar Counsel's requests[.]

MLRPC 8.4 defines professional misconduct for attorneys. Specifically, the hearing judge found that Felder violated Rule 8.4(a), (c), and (d)[13]:

---

[11] **Rule 5.5 Unauthorized Practice of Law; Multijurisdictional Practice of Law.**
(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

[12] **Rule 8.1 Bar Admission and Disciplinary Matters.**
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not
* * *
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

11

[Felder] received a full retainer and failed to perform any substantive work for Mr. and Mrs. Matthews, after which he abandoned the clients without notice. [Felder] failed to deposit the legal fees in trust and failed to return the unearned fees to Mr. and Mrs. Matthews constituting deceit, dishonesty, or misrepresentation in violation of Rule 8.4(c).

[Felder's] inadequate handling of Mr. and Mrs. Matthews' legal representation and failure to respond to Bar Counsel support the conclusion that he engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).

* * *

[Felder's] failure to properly represent Ms. Ekeh and his failure to respond to Bar Counsel support the conclusion that he engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d).

By violating multiple Maryland Lawyers' Rules of Professional Conduct, [Felder] violated Rule 8.4(a).

---

[13] **Rule 8.4 Misconduct.**
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
* * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

12

Finally, relating to Felder's failure to record, create, and maintain his clients' funds, the hearing judge found that Felder violated Maryland Rules 16-606.1[14] and 16-604[15]:

[14] **Md. Rule 16-606.1 Attorney Trust Account Record-Keeping.**
The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
(1) Attorney Trust Account Identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.
(2) Deposits and Disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:
(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

[15] **Md. Rule 16-604 Trust Account – Required Deposits.**
Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an

[Felder] did not deposit any of the fees paid by Mr. and Mrs. Matthews [or Ms. Ekeh] in trust and did not maintain the fees in trust until earned. [Felder] failed to maintain proper records relating to the deposit, maintenance, and disbursement of client funds, thereby violating Maryland Rules 16-606.1 and 16-604.

## DISCUSSION

As we recently explained:

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations omitted). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Att'y Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (quoting *Att'y Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006)). That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. *Id.* at 707, 4 A.3d at 964. In that regard, "[t]he hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Guida*, 391 Md. at 50, 891 A.2d at 1095 (quoting *Att'y Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000)).

We review *de novo* the hearing judge's proposed conclusion of law. *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008). In other words, "the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Att'y Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 764 (2002) (quoting *Att'y Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (alteration in original)). In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a

approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

14

> "clear and convincing" standard of proof. *Att'y Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007).

*Att'y Grievance Comm'n v. Tanko*, 427 Md. 15, 27–28, 45 A.3d 281, 288 (2012).

## EXCEPTIONS

Neither Felder nor Bar Counsel notes any exceptions to the hearing judge's findings of fact or conclusions of law. Thus, although both parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition[,]" Md. Rule 16-758(b), we shall accept the hearing judge's "findings of fact as established for the purpose of determining appropriate sanctions," Md. Rule 16-759(b)(2)(A). Additionally, based upon our *de novo* review, we agree that Felder violated the following MLRPC provisions: Rule 1.1; Rule 1.3; Rule 1.4(a) and (b); Rule 1.15(a) and (c); Rule 1.16(d); Rule 5.5(a); Rule 8.1(b); and Rule 8.4(a), (c), and (d). We also agree that Felder violated Maryland Rules 16-606.1 and 16-604.

## SANCTIONS

Bar Counsel recommends that Felder be disbarred. It directs the Court's attention to five aggravating factors found in Standard 9.22 of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1992).[16] Pursuant to Standard 9.22(b), Bar

---

[16] Aggravating factors include:
   (a)   prior disciplinary offenses;
   (b)   dishonest or selfish motive;
   (c)   a pattern of misconduct;
   (d)   multiple offenses;
   (e)   bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

15

(f)  submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g)  refusal to acknowledge wrongful nature of conduct;
(h)  vulnerability of victim;
(i)  substantial experience in the practice of law;
(j)  indifference to making restitution;
(k)  illegal conduct, including that involving the use of controlled substances.

American Bar Association, *Standards for Imposing Lawyer Sanctions,* § 9.22 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014).

Mitigating factors include:
(a)  absence of a prior disciplinary record;
(b)  absence of a dishonest or selfish motive;
(c)  personal or emotional problems;
(d)  timely good faith efforts to make restitution or to rectify consequences of misconduct;
(e)  full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f)  inexperience in the practice of law;
(g)  character or reputation;
(h)  physical disability;
(i)  mental disability or chemical dependency including alcoholism or drug abuse when:
> (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
> (2) the chemical dependency or mental disability caused the misconduct;
> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
(j)  delay in disciplinary proceedings;
(k)  imposition of other penalties or sanctions;
(l)  remorse;
(m)  remoteness of prior offenses.

Counsel characterizes Felder's misconduct as partly a result of a dishonest or selfish motive. Bar Counsel also points to Felder's pattern of misconduct (Standard 9.22(c)), his multiple offenses (Standard 9.22(d)), his failure to respond to requests during the disciplinary process (Standard 9.22(e)), and his refusal to acknowledge the wrongful nature of his conduct (Standard 9.22(g)).

When determining the appropriate sanction, we must also consider any mitigating factors. *Att'y Grievance Comm'n v. Roberts*, 394 Md. 137, 165, 904 A.2d 557, 574 (2006) ("The appropriate sanction depends on the facts and circumstances of each case, including any mitigating factors."). Here, the hearing judge found no mitigating factors, and there is no reason to upset that finding. *See Att'y Grievance Comm'n v. West*, 378 Md. 395, 411, 836 A.2d 588, 597 (2003) ("On review, we keep in mind that the findings of the trial judge are *prima facie* correct and will not be disturbed unless clearly erroneous.").

Bar Counsel directs the Court's attention to Standard 4.41, which advises:

> Disbarment is generally appropriate when: (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 4.41 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014). Bar

---

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.32 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014).

17

Counsel then reiterates that Felder "knowingly failed to perform the services for which he was retained and that [h]e engaged in a pattern of neglect with respect to his client matters."

As we recently discussed:

> In selecting a sanction, we are cognizant of the principle that attorney discipline proceedings are not instituted to punish an offending lawyer, but rather to protect the public and the public's confidence in the legal profession. *Att'y Grievance Comm'n v. Sucklal*, 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2011). Imposition of a sanction protects the public in two ways: "through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Att'y Grievance Comm'n v. Usiak*, 418 Md. 667, 689, 18 A.3d 1, 14 (2011) (quoting *Att'y Grievance Comm'n v. Mahone*, 398 Md. 257, 268–69, 920 A.2d 458, 465 (2007)). Our selection of an appropriate sanction is guided by the nature and gravity of the violation, the intent with which the violation was committed, and the particular circumstances surrounding each case, including aggravating and mitigating factors. *Att'y Grievance Comm'n v. Khandpur*, 421 Md. 1, 18, 25 A.3d 165, 175 (2011).

*Att'y Grievance Comm'n v. Park*, 427 Md. 180, 195, 46 A.3d 1153, 1161 (2012). When assessing the appropriate sanction, we often refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions*, which advises the consideration of four questions: "(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances?" *Att'y Grievance Comm'n v. Taylor*, 405 Md. 697, 720, 955 A.2d 755, 768–69 (2008) (citation omitted).

18

Here, Felder's conduct was harmful both to his clients and to the public perception of lawyers in general. We are guided by our holding in *Park*:

> [D]isbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees.

427 Md. at 196, 46 A.3d at 1162. Mr. Felder's conduct fits well within the dictates of *Park*. Felder failed to perform any legal services for his clients after accepting a retainer, ignored his clients' repeated requests for updates and attempts to terminate his representation, failed to maintain his clients' funds in trust, abandoned representation of his clients without communication, failed to return unearned fees to one of his clients until after that client had already filed a complaint with the Attorney Grievance Commission, and assisted the unauthorized practice of law.

Accordingly, we conclude that disbarment is the appropriate sanction. For this reason, we entered the September 11, 2014 per curiam order disbarring Respondent and awarding costs against him.